good morning your honors this case represents I think just for the record your name I'm sorry Richard Bulwer from the Federal Defender's Office in Las Vegas Nevada representing representing the petitioner okay and you know I would like to reserve two minutes for okay your honor your honors this case I think represents a test to the circumstance of unusual facts not tethered to specific conduct I readily admit your honor that the facts here your honors are unusual the issue here for this court is at the time the consent was sought was there reasonable suspicion to continue to hold mr. Chacon and at the time the officers questioned him I think there was not and I think the sequence is important in terms of the arrest officer Rhodes arrives at the scene where the car is 1139 mr. Chacon is detained pursuant to the R&R the report recommendation filing 1140 question has already begun at this point in time mrs. Butterball who was the woman who was in the trunk is out at this time and by 1144 mr. Chacon has been Mirandized he is in handcuffs Miss Butterball is in handcuffs and the officers continue to question mr. Chacon at this point in time the officers readily acknowledge that there was no evidence of a kidnap that they had been that had been suggested in this case there was no evidence that Miss Butterball had been tied or there was no injury there was no suggestion that that had happened in fact they did not treat her like a victim they placed her in handcuffs almost immediately you're not challenging the initial Terry stop on the basis of the citizen report of an attempted kidnapping in progress I am NOT I think that there could be different bases for that exited circumstances reasonable suspicion I'm not challenging all right so if we take your characterization with which I agree that this is a very strange set of facts at the time you're talking about here within five minutes or so of the arrival of the first officer on the scene the police still don't know what they've got it might not be a kidnapping but it could be any number of things including a domestic violence dispute some sort of an attempted extortion some sort of illegal eavesdropping I mean if this is the police simply had to withdraw at that point without completing their inquiries as to exactly what was going on no your honor I think that what's significant here is that they can continue their investigation the issue is the nature of the detention my client was taken out at gunpoint and then walked backwards handcuffed and searched this is the court recognized one of the most intrusive forms of detention I am NOT suggesting your honors that they cannot continue to question mr. Chacon by all accounts he was compliant he answered questions he never attempted to in any way misdirect or impede the investigation the issue is not whether or not they can continue to investigate and ask questions the issue is can they continue to hold him in handcuffs facing the police car as after you've been taken out at gunpoint but the question but but the argument in front of us is not whether they could continue to hold him in the handcuffs the question is at the time the consent was obtained was he legitimately being held on suspicion isn't that right that's absolutely because if he was legitimately being held on suspicion isn't the consent proper if he is legitimately being held on suspicion you know I have a second separate argument about why I still believe that circumstances would render that consent involuntary okay but let's let's take the first issue I think that the issue is whether or not at that time he was legitimately being detained and I think this court's precedent in Thomas and in Ortiz Hernandez which I'm sure your judge Tallman and Judge Fletcher you all familiar with since you're part of that panel there was the issue with respect to remember that case there was an issue with respect to at what point reasonable suspicion had dissipated the match rate judge in this case found that reason suspicion dissipated from the almost from the moment that this part about get out of the trunk that's actually in the record at well the magistrate judge found that the magistrate judge found that the reasonable suspicion still existed at the time of the consent what the master judge found was the reasonable suspicion for the kidnap had begun to dissipate but that they should be permitted to continue because unusual nature of the circumstances because they I guess this is kind of like a doctor trying to figure out based on the we've ruled out kidnapping but we haven't ruled out other potential criminal behavior and Terry simply says that you may continue to stop so long as you have reasonable suspicion that criminal activity may be a foot now the magistrate judge found that they did have reasonable suspicion that criminal activity might be a foot but the problem was trying to figure out what the crime was at this point and yours and I suggested that's an important distinction because Terry talks about the fact that unusual circumstances must be tethered to experience supporting an inference of a specific criminal activity it is not sufficient that they have a hunch or so it doesn't it doesn't say it has to be tied to a specific crime the language specifically is reasonable suspicion that criminal activity may be a foot you know I'm not suggesting that's not what it says what I'm saying is that that is tethered to the officers experience as to what types of crimes may be a foot well I've given you two others that you haven't ruled out yet in our diagnosis I'll give you a chaconne I'll address those first of all the officer's testimony makes no mention of any other inference that they drew they went there with the idea of a kidnap and throughout their entire testimony they do not suggest if there's a domestic violence incident because they placed her in handcuffs they didn't call the medics they did not treat her as the officers did in Brooks which is a case cited by the government but we're dealing with a woman in the trunk of an automobile on what was it July the 22nd in Las Vegas you don't normally put people in the trunks of cars at that time of year that in itself I guess what my question which was inartfully frame is you know why couldn't a reasonable police officer believe that this might be an ongoing domestic violence situation why else would a person be in the trunk of a car in July both of the individuals gave consistent and corroborating statements as to why I'll get someone off the roads didn't know that at that point officer Rose was not what was not was not sure of that officer Carlson had heard part of the story your honor so I'm not saying that it was clear that officer Rose was completely familiar with that well I mean the problem with your argument is that they've separated the two people which as I understand it is good patrol procedure to see if you get different stories from the two people but officer Rose hadn't finished talking with mr. Cone and officer Carlson or whoever was with the putative victim here hadn't finished talking to her and hadn't had an opportunity to compare the versions of the stories that they were being given the investigation was still ongoing so what's the problem at that point with officer Rhodes saying to mr. Chacon do you mind if I look in your trunk the problem is your honor if they had 15 minutes to address the issue of the crime that they went there to address and they did not come up with enough 15 minutes any evidence for their activity I thought we I thought we were 1144 right the gun is found 1159 the testimony indicates the gun was found shortly after the consent so for at least 15 minutes well we've got a report to the dispatcher that a gun has been found was the testimony that that report was made immediately upon the finding of the gun or is that when we have a radio or MDT log entry that a gun had been found the testimony gives a different sources for that one is that they can it can be radioed in and the dispatcher can put it in the other is the officer can put some of that in the testimony generally is that there's a lag so there's a lag from the first time so there's lag from them so all we know is that the gun was found sometime between the time he was Miran dies and the time that a log entry was made that a gun had been found actually the officer officer Rhodes in the case there was at least 10 minutes from that time that's amazing now we're between 10 and 15 but in the court that the the district court the metric court found it was approximately again 20 minutes in terms of the length no more than 20 minutes right no more than 20 minutes yeah why don't we hear from the government and then we'll give you a chance to respond good morning Adam Flake for the United States may it please the court I I don't I don't disagree with the basic characterization of this case which is that if if reasonable suspicion had evaporated at the point they asked for consent then then then the search would be invalid but obviously the government strongly disagrees with with mr. Cone's position that that reasonable suspicion has ceased to exist reasonably enough so in your view at the time that they get the consent it's reasonable suspicion of what it is reasonable suspicion that criminal activity is afoot okay but be more specific now because what criminal activity could they have been reasonably suspicious might be afoot well first of all kidnapping and I think judge tell me if I could just address I'm not sure if you were speaking in hypotheticals when you were talking to my colleague but you know kidnapping is ruled out at this at the point that they that they ask him for consent and I and I disagree we have what officer Rhodes knows is that he says he didn't do a kidnap and officer Rhodes knows that the the putative victim doesn't immediately say thank goodness you rescued me I've been kidnapped those are the two facts that he knows well she appears in the victim appears to be rather grumpy that they've taken away her cell phone right so the extent she expresses unhappiness it is not about anything other than give me my phone correct your honor you're absolutely correct but as we pointed out in our brief I don't think that within 15 minutes of starting this investigation they could even be reasonably satisfied that a kidnapping had not occurred this is a potential domestic violence situation you know he this isn't in the record this is not we don't have evidence this I'm talking hypothetically but he could well have said when the police pulled him over he could well have said to her hey you better tell them that I didn't kidnap you or I'm gonna you know you'll hear it when I get done with them and they don't know if she was acting under duress they don't it's as it has been amply discussed already it's bizarre why on earth would a grown woman be lying in the trunk of a car on a hot summer day and so I don't think that kidnapping is I don't think that kidnapping has been ruled out but in addition to that there the there is there are any number of criminal scenarios that could present themselves based on this unusual and I would add nefarious behavior why would somebody hide in a trunk why did somebody hide on a hot summer's day if they're if they're acting in a way that is above board it's suspicious now it's an other seems to me there's absolutely no obligation on the part of the police at the time they act to say I'm suspicious of X Y & Z do we attach any importance on the question of suspicion that criminal activity might have been afoot as to they don't say anything afterwards as to what criminal activity they thought might be afoot well I mean it's actually too much to expect of them at the time they're acting to say well okay here I'm just expecting X Y & Z no they have some sense that something may be wrong and so on but well I'm not I'm not sure if I don't think that is required I don't I'm not going to pretend that I know what the police were thinking but I don't think they you know sat down with their codebook and they said well this could be extortion or it could be eavesdropping or it could be a kidnap or it could be this they have they haven't they got a call that somebody stuck somebody in a trunk no I'm not I'm not even close to imposing upon them a requirement at the time they get the consent that they say out loud okay here's what I think right asking a different question is at some later time as we are evaluating whether or not they had reasonable suspicion should we expect the police tell us then when they're no longer pressed they're just sitting in an office somewhere what suspicion what crimes they might have suspected well I'm sorry that I wasn't clear in my previous answer I don't I don't think so I don't think that they're required to even formulate what what particular crime they may have been suspecting at the time they're doing an investigation and they're trying to they're not starting with crimes in mind and and with particular crimes in mind and trying to check off a list oh there he's not doing this and he's not doing this they're they're starting with what they have which is a bizarre situation that suggests criminality and the investigation going forward from that point which is let's let's figure out what's going on here and and so I don't think that that they're required to in some post hoc sort of description of what specific crimes they may have been looking for what so is I'm looking at the cross-examination of officer Rhodes which is on er 72 and he was asked because at that point it was a little bit of a strange scene I would imagine right answer yes question because it was at that point it was still unknown correct so your argument there is I should read into that that he had not yet ruled out kidnap that didn't know what he had that's correct he did not know what he had unless the court has any further questions I'll submit okay thank you response let's start out with a minute thank you I think that the officers do testify that if you continue to read that same quote judge Solomon where the officers pressed about the circumstances to based upon her condition no so at that point there's no indication and the officer wrote testified also that there was nothing in his experience to suggest that this was a kidnap that he'd had kidnapped cases before and it doesn't resemble that I think the issue before the court is does unusual and albeit strange and bizarre justify continued investigation for in terms of detention again I'm not suggesting they couldn't ask him questions and I'm not suggesting that they could not have investigation what I'm saying once they have facts that tend to undermine their reason for detaining the individual as this court has found in Thomas and Ortiz Hernandez they must release that individual it does not mean they cannot continue to question that individual but the officers I mean going on and then because the next question is based on her condition it didn't I'm not saying that you could say to a certainty right and then there's no audible response at all and then they go on and talk about other kidnapping calls that the officers had as I read that testimony it's based on the simple fact that she got out of the trunk unheard that you couldn't say based on her physical condition that you had a kidnapping but I mean it could be a false imprisonment it could be a lot of things I would suggest to the court that they had at least 15 minutes I've been for your arms for 10 minutes and I can tell you that 10 minutes is a long time but only if you're being beat up that may be the most prophetic line I've heard in years and your honors don't have guns and have not placed me in handcuffs what I'm suggesting to the courts is that they had more than sufficient time and there is no evidence in the record support continued detention of my client and I thank you both sides for your arguments United States vs. Chaconne is now submitted for decision at this point we'll take a 10-minute break
judges: Fernandez, Fletcher W. , Tallman